**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

FRAMUS & WARWICK MUSIC USA, INC.
d/b/a W-MUSIC DISTRIBUTION USA,

Plaintiff,

v. Case No. 1:26-cv-4530

U.S. CUSTOMS AND BORDER PROTECTION,
and RODNEY S. SCOTT, in his official capacity as
Commissioner of U.S. Customs and Border Protection;
and UNITED STATES OF AMERICA,

Defendants.

**COMPLAINT**

1. Plaintiff is an importer as defined in 19 C.F.R 101.1. Plaintiff brings this suit because it was forced to pay tariffs that have since been deemed unlawful.

2. Through a series of executive orders that began in February 2025, the President imposed sweeping and substantial new tariffs ("IEEPA duties"). In doing so, he cited the International Emergency Economic Powers Act ("IEEPA") as the purported authority to impose the IEEPA duties. The IEEPA duties were imposed on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports of finished products and transports imports. Plaintiff was responsible for paying—and did pay—these IEEPA duties on the imported goods.

3. On February 20, 2026, the U.S. Supreme Court struck down these tariffs, holding the IEEPA duties are unlawful because "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. V. Trump,* No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump,* 149 F.4411 1312 (Fed. Cir. 2025)).

4. The Supreme Court also confirmed that challenges to the IEEPA duties fall

"within the exclusive jurisdiction of" this Court. *Id.* at 5. Thus, this Court has jurisdiction and authority to order remedial relief and refunds of IEEPA duties paid by importers.

5. Accordingly, for the reasons set out in *Learning Resources,* Plaintiff seeks a full refund from Defendants of all IEEPA duties Plaintiff has paid to the United States.

## PARTIES

6. Plaintiff Framus & Warwick Music USA, Inc. d/b/a W-Music Distribution USA is a U.S. corporation formed under the laws of Delaware and has its principal place of business in Nashville, Tennessee.

7. Defendant United States Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

8. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

9. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

10. Defendants are referred to collectively in this Complaint as "CBP" or the "Government."

11. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i).

12. This Court has the same powers as a United States District Court, whether arising in law, equity, or by statute. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, this Court can enter a money judgment against the United States and can order any other appropriate civil relief. 28 U.S.C. §§ 2643(a)(1), (c)(1).

13. Plaintiff has standing to bring this lawsuit because it is an importer of goods imported into the United States from countries subject to the IEEPA duties as implemented and collected by CBP, which the Supreme Court has now determined were unlawful. As a result of the executive orders identified in this lawsuit, Plaintiff paid IEEPA duties to the United States and suffered injury caused by those orders. The relief Plaintiff seeks from this Court would redress those injuries.

## GENERAL PLEADINGS

### I. The President Orders a Series of Tariffs, Invoking IEEPA for His Authority.

#### *A. The IEEPA Duties*

14. On February 1, 2025, the President issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. The IEEPA was the purported source of authority for each of the tariffs.

15. The executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9,117, *Imposing Duties To Address the Situation at Our Southern Border* (Feb. 7, 2025), imposed an additional 25% tariff on the import of goods from Mexico, with certain exceptions.

16. The executive order directed at Canada, Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border,* 90 Fed. Reg. 9,113 (Feb. 7, 2025), also imposed a 25% tariff, with certain exceptions.

17. The executive order directed at China, Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9,121 (Feb. 1, 2025), imposed an additional 10% *ad valorem* tariff on products from China imported into the United States. This tariff was imposed on top of existing duties.

18. On February 5, 2025, the President issued another order, Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's*

*Republic of China,* 90 Fed. Reg. 9,277 (Feb. 11, 2025).

19. On March 3, 2025, the President raised the incremental tariffs on imports from China to 20% by amending the China Tariff Order through Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 11,463 (Mar. 7, 2025) ("March 3 Amendment").

20. On April 2, 2025, citing trade deficits with the U.S.'s trading partners as a national emergency, the President issued Executive Order 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits,* 90 Fed. Reg. 15,041 (Apr. 7, 2025) ("Reciprocal Tariff Order"). The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, 2025, and additional "reciprocal" tariffs on 57 countries, effective April 9, 2025. *Id.* at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id.*

21. China imposed retaliatory tariffs on the United States. On April 8, 2025, the President responded to those retaliatory tariffs by raising the reciprocal tariff rate on China by 50 percentage points. Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China,* 90 Fed. Reg. 15,509 (Apr. 14, 2025). This brought the tariff up to 84% from the previous 34%.

22. The next day, the President issued a 90-day suspension of the higher country-specific tariffs on all countries except for China. Rather than suspend the tariff imposed on China, he raised the "reciprocal" tariff imposed from 84% to 125%. Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment,* 90 Fed. Reg. 15,625 (Apr. 15, 2025). This reciprocal tariff was in addition to a separate 20% tariff on

imports from China, which remained in place. As a result, most imports from China faced a minimum 145% IEEPA tariff.

23. Through these executive orders, the President directed changes to the Harmonized Tariff Schedule of the United States ("HTSUS") by requiring that goods subject to the IEEPA duties be entered under new tariff codes.

24. On April 14, 2025, several companies initiated the litigation that ultimately led to the Supreme Court's February 20, 2026, ruling. Those companies began by filing an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections, et al. v. Trump, et al.,* No. 25-cv-00066 (Dkt. 2). This Court held the orders were unlawful and the Federal Circuit, sitting *en banc,* affirmed. The Federal Circuit's decision was affirmed by the Supreme Court on February 20, 2026.

25. In the months following the *V.O.S. Selections* complaint, the President, invoking the IEEPA, issued additional executive orders imposing additional tariffs and modifying others.

26. CBP continued to collect IEEPA duties imposed by the executive orders, purportedly issued under the IEEPA, while the *V.O.S. Selections* litigation and related litigation remained pending. On or about February 24, 2026, the CBP ceased collecting IEEPA duties.

27. Through this Complaint, Plaintiff seeks relief for all duties it has paid to the United States arising from the IEEPA executive orders ("Challenged Tariff Orders") that have not yet been refunded.

*B. CBP's Implementation of the Tariffs*

28. CBP is charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S. C. §§ 1500, 1502.

29. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the new tariff nomenclature: the Harmonized Tariff Schedule of the

United States. Pub. L. No. 100-418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id.*

30. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

31. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States,* 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States,* 582 F. Supp. 3d 1365, 1378-79 (Ct. Int'l Trade 2021).

32. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

*C. Liquidation*

33. A "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

34. Typically, when goods enter *(i.e.,* are imported into) the United States, the importer of record pays an estimated duty on the *entry* based on its customs declaration, which asserts a value, origin, and HTSUS classification for the imported goods. *See* 9 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

35. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

36. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

37. Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. § 1504(a).

38. In *AGS Co. Automotive Sol. v. U.S. Customs and Border Protection, et. al.,* No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025) *("AGS"),* a three-judge panel of this Court confirmed this Court has authority to reliquidate entries subject to the IEEPA duties. *Id.* In a related action, the government represented that it "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection, et. al.,* No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025).

**II. The Supreme Court Held the IEEPA Duties are Not Authorized**

39. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. The government appealed that decision to the Court of Appeals for the Federal Circuit.

40. The Federal Circuit stayed this Court's decision and injunction pending a hearing. As a result, the CPB continued collecting IEEPA duties during the litigation.

41. On August 29, 2025, the Federal Circuit affirmed this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump,* 149 F.4th 1312 (Fed.

Cir. 2025) (*en banc.*), *cert. granted,* No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

42. In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize any tariffs. *See Learning Res., Inc. v. Trump,* 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment,* No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources.* The cases were consolidated.

43. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources,* slip op. at 20.[1]

**III. Post-*Learning Resources* Litigation**

44. In the wake of *Learning Resources*, this Court has, through various orders, directed the Government to implement a system for refunding the illegally collected IEEPA duties. In response, CBP developed the Consolidated Administration and Processing of Entries ("CAPE") and the Court has overseen the implementation of CAPE.

45. The initial phases of CAPE implementation, which dealt with refunds of duties that had not been finally liquidated, were available to importers regardless of whether they filed suit.

46. "At various points and in various proceedings, the Government has represented that it will refund estimated IEEPA duty deposits to Plaintiffs that challenge the

---

[1] This Complaint cites to the *"Learning Resources"* slip opinion because that was the lead case at the Supreme Court for purposes of the case caption. The *Learning Resources* case itself was vacated for lack of jurisdiction, while the Federal Circuit's decision in *V.O.S. Selections* was affirmed.

duties in Court." *In re Tariffs Collected in Reliance on International Emergency Economic Powers Act*, 1:25-cv-78 (Ct. Int'l Trade, July 15, 2026).

47. On July 15, 2026, this Court issued an order in response to "the Government's position that a court order directing the reliquidation of entries, whose liquidation has become final, would be necessary to provide the Government with the authority to reliquidate those finally liquidated entries and thus to provide complete relief to Plaintiffs in the cases." *Id.* The Court's order, "provides the Government with that legal authority." *Id.*

## IV. Plaintiff Paid IEEPA Duties

48. As of the date of this Complaint, Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders.

49. The goods Plaintiff imported into the United States that were subject to IEEPA duties entered the United States from foreign countries under new HTSUS codes that differed from the HTSUS codes that would have applied to the imports in the absence of the Challenged Tariff Orders.

50. Several entries on which Plaintiff paid duties were finally liquidated and therefore were ineligible for refund under CAPE Phase 1. As a result, Plaintiff still has not received a refund for the IEEPA duties paid on those entries that have been finally liquidated.

51. Accordingly, Plaintiff brings this suit to recover the IEEPA duties that it has paid, for which it has not received a refund.

## COUNT I
## THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN *LEARNING RESOURCES*

52. Plaintiff incorporates paragraphs 1-51 above by reference.

53. In *Learning Resources,* the Supreme Court held that the IEEPA duties are

unlawful and the President exceeded his authority when he imposed tariffs on imported goods.

54. The Challenged Tariff Orders purport to impose duties and modify the HTSUS solely under IEEPA, and as a result are *ultra virus* acts.

55. This Court is bound by the *Learning Resources* decision and, as a result of that decision, should order refunds of all IEEPA duties paid by Plaintiff, with interest as provided by law.

**COUNT II**
**REFUND OF IEEPA DUTIES PAID**

56. Plaintiff incorporates paragraphs 1-55 by reference.

57. This Court has the authority to order reliquidation and refunds of duties that were unlawfully levied.

58. On July 15, 2026, this Court ordered the Government to reliquidate all finally liquidated IEEPA duties for any Plaintiff who has sued for a refund.

59. Plaintiff has now sued seeking a refund of the IEEPA duties it has paid, for which it was unable to obtain a refund under Phase 1 of CAPE.

60. Plaintiff is entitled to a refund of the IEEPA duties that it has paid.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

a) Order CBP to reliquidate any entries that have been liquidated with IEEPA duties;

b) Order the United States to refund to Plaintiff the duties collected from Plaintiff on all entries subject to IEEPA duties, with interest as provided by law;

c) Award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action, and

d) Grant such further relief as this Court deems proper.

Dated: October 14, 2026

Respectfully submitted,

FRAMUS & WARWICK MUSIC USA, INC.
d/b/a W-MUSIC DISTRIBUTION USA

By: /s/Bethany J. Fogerty

Bethany J. Fogerty (VSB No. 94753)
Leonard L. Fleisig (VSB No. 83500)
Willcox & Savage, P.C.
440 Monticello Avenue, Ste. 2200
Norfolk, Virginia 23510
(757) 628-5500 Telephone
(757) 628-5566 Facsimile
bfogerty@wilsav.com
lfleisig@wilsav.com
*Counsel for Plaintiff*